This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: November 13, 2023**

**No. S-1-SC-39372**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.

**LUIS JIMENEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**James M. Hudson, District Judge**

Bennett J. Baur, Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
John Kloss, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**BACON, Chief Justice.**

**{1}** A jury convicted Defendant Luis Jimenez of first-degree felony murder for his participation in a home burglary that resulted in the death of Saul Sanchez (Victim). On direct appeal, Defendant argues that his conviction should be overturned because it was not supported by sufficient evidence. He further argues that the district court improperly admitted photographs and failed to instruct the jury that an accomplice's

testimony should be viewed with skepticism. We conclude that Defendant's conviction is supported by substantial evidence, the admission of the photographs was harmless, and there was no instructional error. Exercising our discretion under Rule 12-405(B) NMRA to dispose of this appeal by nonprecedential decision, we affirm.

## I.     BACKGROUND

**{2}**     Defendant concedes that he and another man, Joseph Barnhill, broke into a house to steal jewelry and other valuables. No one was home when they first entered, but as they were ransacking the house, a car pulled into the driveway. Defendant maintains that he ran away when he heard the car, while Barnhill stayed behind. According to Defendant, it was Barnhill, not Defendant, who shot Victim when Victim entered the house.

**{3}**     The evidence against Defendant included eyewitness testimony describing the clothing and build of the masked man or men whom Victim's wife and daughters saw running from the scene; forensic evidence linking Defendant to the deadly bullet and other items found on the scene; surveillance footage of the getaway car that was linked to Defendant; Defendant's own admissions to participating in the burglary; and the testimony of the accomplice, Barnhill, that directly implicated Defendant as the man who pulled the trigger.

**{4}**     The jury was given two separate instructions on first-degree felony murder. Under the first instruction, the jury could convict if it found Defendant guilty as the principal—that is, if it found that Defendant killed Victim. Under the second instruction, the jury could convict if it found Defendant guilty as an accomplice—that is, if it found that another person killed Victim while Defendant "helped, encouraged, or caused the killing to be committed." The jury was given a general verdict form that did not specify whether the jury was convicting Defendant as the principal or an accomplice. The jury convicted Defendant of first-degree felony murder and aggravated burglary. The district court sentenced Defendant to life imprisonment.

## II.     DISCUSSION

**{5}**     Defendant raises three issues on appeal: (1) sufficiency of the evidence for felony murder; (2) evidentiary error; and (3) instructional error. Defendant raises two separate sufficiency challenges. First, he argues that the State did not prove that he acted as the principal because that theory was only proven through the inherently unreliable testimony of his accomplice. Second, he argues that the State did not prove that he acted as an accomplice because he did not have the requisite mens rea— Defendant asserts that there was no evidence of his intent to kill or that he "helped, encouraged, or caused the killing." The asserted evidentiary error is the admission of photographs of certain frames of surveillance video purporting to show Defendant in a jewelry store after the murder. The asserted instructional error is the district court's failure to provide the jury with a cautionary instruction on accomplice testimony. For the following reasons, we reject Defendant's arguments.

**A. Standard of Review**

**{6}** Our standard of review for sufficiency of the evidence is highly deferential to the jury's verdict.

> We review whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. Evidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. In particular, New Mexico appellate courts will not invade the jury's province as fact-finder by second guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury. So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions.

*State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (text only) (citations omitted).[1]

**{7}** We review evidentiary rulings for abuse of discretion. *State v. Jesenya O.*, 2022-NMSC-014, ¶ 10, 514 P.3d 445. "An abuse of discretion occurs when the evidentiary ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the district court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (text only) (citation omitted). "Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful." *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. Unpreserved claims of instructional error are reviewed for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258.

**{8}** Under these standards, we address each of Defendant's arguments in turn.

**B. Substantial Evidence Supports Defendant's Conviction for Felony Murder**

**{9}** Defendant was convicted of felony murder through a general verdict where the jury could have determined his liability as either principal or accomplice. Because either theory would support the conviction, the conviction will withstand a sufficiency challenge unless neither theory was supported by substantial evidence. *See State v. Salazar*, 1997-NMSC-044, ¶ 43, 123 N.M. 778, 945 P.2d 996 ("[D]ue process does not require a general verdict of guilt to be set aside so long as *one of the two* alternative bases for conviction is supported by sufficient evidence.").

**{10}** To support Defendant's conviction for felony murder under a theory of principal liability, the State had to prove each of the following elements beyond a reasonable

---

[1]The "(text only)" parenthetical indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

doubt: (1) Defendant "committed the crime of aggravated burglary under circumstances or in a manner dangerous to human life," (2) Defendant caused Victim's death "during the commission of aggravated burglary," (3) Defendant "intended to kill or knew that his acts created a strong probability of death or great bodily harm," and (4) the crime happened in New Mexico on the date in question.

**{11}** Defendant argues that there was insufficient evidence under this theory because "the State failed to prove [that Defendant] was the shooter when such evidence was based entirely on the self-serving testimony of Mr. Barnhill." Defendant asserts that Barnhill's testimony is "the only evidence" that Defendant shot Victim, and "[a]ll of the physical, forensic, and unbiased eyewitness evidence established that [Barnhill] was the shooter, not [Defendant]."

**{12}** Barnhill testified that when Defendant came out of the house after the burglary, Defendant said that he "just hurt somebody, killed somebody," then pulled out a gun and put it back in his pocket. The testimony of an accomplice is competent evidence, and we do not reweigh that evidence on appeal. *See* Rule 11-601 NMRA ("Every person is competent to be a witness unless these rules provide otherwise."); *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 ("This court does not weigh the evidence and may not substitute its judgment for that of the fact finder."). We do not look to contrary evidence "to determine if there was another hypothesis that would support innocence." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. The credibility of Barnhill's testimony was a question for the jury. *See* UJI 14-5020 NMRA (noting that the jurors "alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them"). Thus, even if Defendant was correct in his assertion that no other evidence supports his conviction as the principal, Barnhill's testimony provided substantial evidence that Defendant was the shooter.

**{13}** Moreover, Defendant is not correct in denying the existence of other evidence that he shot Victim. The State presented evidence that a spent shell casing found in Defendant's house was fired from the same gun that was used to kill Victim. From this evidence, the jury could draw a reasoned inference that the murder weapon belonged to Defendant. Three other eyewitnesses described the suspect as wearing dark clothing, which Defendant admitted that he was wearing. From this evidence, the jury could draw a reasoned inference that the eyewitnesses saw Defendant in the house after the shooting. Viewing this evidence in the light most favorable to the verdict, as we must pursuant to *Garcia*, 2011-NMSC-003, ¶ 5, we conclude that substantial evidence supports the felony murder conviction under a principal liability theory.

**{14}** Because there was substantial evidence to support the felony murder conviction under the State's theory that Defendant acted as the principal, the conviction is supported by sufficient evidence. *Salazar*, 1997-NMSC-044, ¶ 43. We need not address Defendant's additional argument that there was insufficient evidence under the alternative theory. *See Salazar*, 1997-NMSC-044, ¶ 43 (A general verdict does not violate due process "so long as one of the two alternative bases for conviction is supported by sufficient evidence.").

## C.  The Admission of Photographs of Surveillance Video Was Harmless Error

**{15}**  Defendant argues that it was error to admit photographs taken from a jewelry store's surveillance video that purport to show Defendant at the jewelry store after the murder. The photographs were admitted under a "silent witness" theory of authentication, wherein "the photographic evidence is a 'silent witness' which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness." *State v. Henderson*, 1983-NMCA-094, ¶ 8, 100 N.M. 260, 669 P.2d 736. The State did not introduce the photographs through the testimony of a jewelry store employee with knowledge of the surveillance video recording system; instead, the photographs were introduced through the testimony of a police officer who photographed certain still frames of surveillance video from the jewelry store.

### 1.  The admission of the photographs was error

**{16}**  The admission of these photographs was error because they were not properly authenticated. Photographic evidence offered under a "silent witness" theory, such as the photographs in this case, must "be authenticated by the testimony of a witness with knowledge that the thing is what it purports to be." *State v. Imperial*, 2017-NMCA-040, ¶ 29, 392 P.3d 658 (text only) (citation omitted); *see also* Rule 11-901 (B)(1) NMRA. Thus, a witness who is familiar with the capabilities and normal use of the surveillance video is qualified to lay this type of foundation. *See, e.g.*, *Imperial*, 2017-NMCA-040, ¶ 31 (holding that surveillance video was authenticated by a Wal-Mart employee who identified the video as being from her store and testified about the store's video capabilities and procedures).

**{17}**  In this case, however, the officer did not testify that he was familiar with the jewelry store's surveillance video capabilities or normal use. He simply testified that when he arrived at the jewelry store, he saw someone trying to download the video and he "[thought] there was some computer[] somewhere and the video monitor that they were . . . trying to download . . . from," but he "[did not] recall if [the video] was paused or if it was in the loop playing" or if he saw "more than one video." Taken as a whole, this testimony did not provide an adequate foundation from which the jury could conclude that the photographs were an accurate recording of what they purported to be. *See State v. Heh*, A-1-CA-37243, mem. op. ¶ 26 (N.M. Ct. App., Jan. 6, 2021) (nonprecedential) (holding that the police officer's testimony alone could not properly authenticate the gas station surveillance video); *see also City of Las Cruces v. Rodriguez*, A-1-CA-32904, mem. op. ¶¶ 18-19 (N.M. Ct. App., Oct. 16, 2014) (nonprecedential) (holding that police officer testimony alone could not authenticate documents generated by a third party).

### 2.  The error was harmless

**{18}**  "We review improperly admitted evidence for non-constitutional harmless error." *State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936. "[N]onconstitutional error is harmless when there is no reasonable probability the error affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (text only) (emphasis and citation omitted). When

determining whether the error affected the verdict, we "examine the importance of the erroneously admitted evidence in the prosecution's case, as well as whether the error was cumulative or instead introduced new facts." *Id.* ¶ 43 (text only) (citation omitted). "Defendant bears the initial burden of demonstrating that he was prejudiced by the error." *State v. Astorga*, 2015-NMSC-007, ¶ 43, 343 P.3d 1245.

**{19}** Defendant contends that this error was not harmless because it bolstered Barnhill's testimony that Defendant sold the stolen jewelry after the incident and because it undermined his own credibility in that his confession to police did not mention his trip to the jewelry store. These contentions do not lead us to conclude that the admission of the photographs was prejudicial. The photographs merely demonstrated Defendant's presence in the jewelry store after the crime, which supported an inference that he committed the burglary. But that inference was of marginal importance compared to the other evidence directly supporting the charge based on Defendant's behavior before and during the crime—most crucially, Defendant's own confession to committing the burglary and Barnhill's testimony about the burglary. Ample physical evidence also linked Defendant to the aggravated burglary. We conclude that there is no reasonable probability that the photographs affected the verdict. Thus the admission of the photographs was harmless error.

## D. There Was No Fundamental Error in the Jury Instructions

**{20}** Defendant maintains that the district court should have instructed the jury that the testimony of an accomplice must be corroborated and viewed with caution. Defendant acknowledges that he did not proffer such an instruction at trial, and so we review this unpreserved issue for fundamental error. *See Benally*, 2001-NMSC-033, ¶ 12.

**{21}** There was no fundamental error in the jury instructions given. New Mexico law in this area is well settled. This Court determined that no cautionary instruction on accomplice testimony should be given in *State v. Sarracino*, 1998-NMSC-022, ¶¶ 12-19, 125 N.M. 511, 964 P.2d 72. We determined that such an instruction should not be given because it improperly calls on "the jury to consider the testimony of the particular witness as suspect and to weigh the testimony of the particular witness differently than the testimony of other witnesses." *Id.* ¶ 17 (text only) (citation omitted). In that case, we held that the general instruction on witness credibility, UJI 14-5020, *id.* ¶ 8, adequately instructs the jury on how to evaluate the credibility of any witness. *Sarracino*, 1998-NMSC-022, ¶ 17. And our jury instructions incorporate *Sarracino*'s holding. UJI 14-5015 NMRA sets forth a cautionary instruction on accomplice testimony for which the use notes state, "No instruction on this subject shall be given." *See Delfino v. Griffo*, 2011-NMSC-015, ¶ 19, 150 N.M. 97, 257 P.3d 917 ("Use notes, though not part of the statute or jury instruction, are adopted by this Court and binding on the district courts.") It was not fundamental error for the district court to fail to provide an instruction that is explicitly prohibited by our case law and uniform jury instructions.

## III. CONCLUSION

**{22}** For the reasons stated, we reject Defendant's arguments that his first-degree felony murder conviction was not supported by sufficient evidence and that evidentiary or instructional error warrants a new trial. We affirm.

**{23}** **IT IS SO ORDERED.**

**C. SHANNON BACON, Chief Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**