2005-NMCA-133

124 P.3d 215

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Darcy Sue McWHORTER,
Defendant–Appellant.**

**No. 24,852.**

Court of Appeals of New Mexico.

Sept. 30, 2005.

Certiorari Denied, No. 29,496,
Nov. 14, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Steven S. Suttle, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defendant, Santa Fe, NM, for Appellant.

**OPINION**

PICKARD, Judge.

{1} Defendant appeals her conviction of attempt to commit trafficking (by manufacturing). Defendant was convicted after entering a conditional guilty plea, reserving the right to appeal whether the general/specific rule required the State to charge Defendant with possession of drug paraphernalia, NMSA 1978, § 30–31–25.1(B) (2001), rather than attempt to commit trafficking (by manufacturing), NMSA 1978, § 30–31–20(A)(1) (1990). Defendant's conviction resulted from her arrest for shoplifting medications containing ephedrine. Defendant intended to sell the medications so that the ephedrine could be used to manufacture methamphetamine. On appeal, Defendant argues that (1) she should have been charged with possession of drug paraphernalia, instead of attempt to commit trafficking (by manufacturing) because ephedrine meets the definition of drug paraphernalia as defined by NMSA 1978, 30–31–2(V) (2002), and (2) the general/specific rule is applicable under the facts of this case. We disagree and affirm.

{2} We note Defendant's appeal raises no issue concerning whether her acts could amount to an attempt to manufacture controlled substances. *See State v. Brenn*, 2005 NMCA 121, ¶¶ 23–24, 138 N.M. 451, 121 P.3d 1050 (2005) (holding that possession of 5000 pseudoephedrine pills, some of which were unpackaged, together with other acts that would ultimately lead to the manufacture of methamphetamine, were sufficient to constitute an attempt). In addition, we would not reach the issue of whether Defendant's acts constituted an attempt, because the issue was not reserved in the plea agreement. *See State v. Hodge*, 118 N.M. 410, 416–17, 882 P.2d 1, 7–8 (1994).

**FACTS AND BACKGROUND**

{3} Defendant was arrested for shoplifting eight boxes of non-prescription medications containing ephedrine. Defendant told officers that she would receive $100 if she brought back the medications to Deming, New Mexico. She also admitted that she was aware that the medications are used to manufacture methamphetamine. Defendant was charged with trafficking (by manufacturing). Defendant entered her conditional guilty plea to attempt to commit trafficking (by manufacturing). This appeal follows.

DISCUSSION

**1. Defendant should not have been charged with possession of drug paraphernalia because ephedrine does not meet the definition of drug paraphernalia as defined by Section 30–31–2(V).**

{4} Defendant argues that she should have been charged under Section 30–31–25.1(B), which prohibits possessing drug paraphernalia with the intent to deliver the paraphernalia knowing that it will be used to manufacture a controlled substance. Defendant argues that she should have been charged under Section 30–31–25.1(B) because ephedrine meets the definition of drug paraphernalia as defined by Section 30–31–2(V). We disagree.

{5} The meaning of language used in a statute is a question of law that we review de novo. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). We give such language its ordinary and plain meaning unless the legislature indicates a different interpretation is necessary. *State v. Hicks*, 2002–NMCA–038, ¶ 11, 132 N.M. 68, 43 P.3d 1078. If the language of the statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation. *State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990). We closely examine the overall structure of the statute that we are interpreting. *State v. Calvert*, 2003–NMCA–028, ¶ 15, 133 N.M. 281, 62 P.3d 372.

{6} Section 30–31–2(V) defines drug paraphernalia as follows:

"[D]rug paraphernalia" means all equipment, products and materials of any kind that are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance or controlled substance analog in violation of the Controlled Substances Act.

Section 30–31–2(V)(1)–(12) then lists examples of paraphernalia including kits, devices, testing equipment, scales, balances, dilutants, adulterants, separation gins, sifters, blenders, bowls, containers, spoons, capsules, balloons, envelopes, objects designed for use in storing or concealing controlled substances, syringes, needles, pipes, masks, roach clips, and bongs. Section 30–31–2(V)(13) then reads as follows:

[I]n determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

(a) statements by the owner or by anyone in control of the object concerning its use;

(b) the proximity of the object, in time and space, to a direct violation of the Controlled Substances Act ... or any other law relating to controlled substances or controlled substance analogs;

(c) the proximity of the object to controlled substances or controlled substance analogs;

(d) the existence of any residue of a controlled substance or controlled substance analog on the object;

(e) instructions, written or oral, provided with the object concerning its use;

(f) descriptive materials accompanying the object that explain or depict its use;

(g) the manner in which the object is displayed for sale; and

(h) expert testimony concerning its use[.]

For the convenience of the reader, we reproduce Section 30–31–2(V) in its entirety in an Appendix.

**{7}** Here, the statute is clear and unambiguous. The plain meaning and ordinary usage of the terms listed in the statute's examples of drug paraphernalia indicate that the legislature intended that drug paraphernalia be limited to the instruments and tools used to prepare, package, and administer controlled substances and controlled substance analogs or the ingredients used to cut them, and not to the ingredients used to make them. The statute does not list drug precursors, such as ephedrine, *see* NMSA 1978, § 30–31B–3(C) (1989), or over-the-counter medications containing a drug precursor as an example of paraphernalia, and no example listed in the statute can be interpreted to apply to such precursors. Drug precursors and over-the-counter medications are specifically addressed by the legislature in the Controlled Substances Act in NMSA 1978, §§ 30–31B–1 to–18 (1989, as amended through 2004). Whether the medications Defendant shoplifted are exempt as drug precursors under that Act, *see* § 30–31B–2(L), is irrelevant to the issue now before the Court, which is whether the legislature intended ingredients used to make drugs to be drug paraphernalia. We conclude that the legislature was aware of how to list drug precursors or over-the-counter medications containing a drug precursor as an example of drug paraphernalia if it intended for these substances to be considered drug paraphernalia. *See State v. Anderson,* 110 N.M. 382, 385, 796 P.2d 603, 606 (Ct.App.1989) (stating that where the legislature utilizes a term in a section of a statute, and that term is absent from another portion of the statute, the legislature did not intend for the second statute to apply to that term). Thus, we determine that Section 30–31–2(V) clearly and unambiguously does not include ephedrine within its definition of drug paraphernalia.

**{8}** Defendant argues that Section 30–31–2(V)(13)(a) supports her argument that the ephedrine should be considered paraphernalia. Section 30–31–2(V)(13)(a) provides that in determining whether an object is drug paraphernalia, a court should consider "statements by the owner or by anyone in control of the object concerning its use." Here, Defendant contends that we should consider her statement that she had shoplifted the medications containing ephedrine with the intent to sell the medications, knowing that the ephedrine would be used to manufacture methamphetamine. In responding to Defendant's argument, we first note that Section 30–31–2(V)(13)(a) is specifically listed as just one consideration that courts should take into account when determining whether an object is drug paraphernalia. We also reject Defendant's claim that her statements transformed ephedrine into drug paraphernalia, because we do not believe that the legislature intended for an owner of an object to define the object as drug paraphernalia through his or her statements even when the object falls outside the definition of drug paraphernalia as defined by the language of the statute. *Rowell,* 121 N.M. at 114, 908 P.2d at 1382 (holding that we will not interpret a statute in a way that would render the statute unreasonable, unjust, or absurd).

**{9}** Finally, Defendant directs our attention to *State v. Frazier,* 30 Kan.App.2d 398, 42 P.3d 188, 193 (2002), in which the court held that ephedrine falls within the definition of drug paraphernalia because ephedrine is a material used to manufacture methamphetamine. We agree with Defendant that the statute that the *Frazier* court interpreted in concluding that ephedrine is drug paraphernalia is substantially similar to our statute defining drug paraphernalia. However, we decline to follow the holding of *Frazier.* We note that the *Frazier* court concluded that ephedrine was drug paraphernalia because ephedrine was a material, and it is used to manufacture methamphetamine; however,

the court did not analyze how the term "material" should be interpreted when reviewing the statute as a whole and taking into consideration the examples of drug paraphernalia listed by the Kansas legislature. We have previously held that when we interpret our statutes, we should read the statute as a whole, and each section should be construed in connection with every other section. *State v. Hall*, 119 N.M. 707, 710, 895 P.2d 229, 232 (Ct.App.1995). Thus, we do not adopt the holding of *Frazier*, because we conclude that the *Frazier* court did not follow cases that we deem controlling on the issue of statutory construction.

{10} We find no merit in Defendant's argument that she should have been charged with possession of drug paraphernalia because ephedrine is neither a drug precursor nor a controlled substance analog. The State was correct by not charging Defendant with possession of drug paraphernalia because over-the-counter medications containing ephedrine are not drug paraphernalia. Furthermore, the State properly charged Defendant because certain conduct that goes far enough in amassing the ingredients and preparing them to manufacture methamphetamine is proscribed by the offense of attempt to commit a violation of Section 30–31–20(A)(1), which criminalizes trafficking (by manufacturing). Section 30–31–20(A)(1) states that:

> A. As used in the Controlled Substances Act ..., "traffic" means the:
>
> (1) manufacture of any controlled substance enumerated in Schedules I through V or any controlled substance analog as defined in Subsection W of Section 30–31–2[.]"

Schedule II lists methamphetamine as a controlled substance. NMSA 1978, § 30–31–7(A)(3)(c) (1979). Therefore, methamphetamine is a controlled substance whose trafficking (by manufacturing) is prohibited by Section 30–31–20(A)(1).

**2. The general/specific rule is not applicable under the facts of this case because Section 30–31–25.1(B) does not apply to Defendant.**

{11} Defendant argues that the general/specific rule prohibits her charge with attempt to commit trafficking (by manufacturing) because Section 30–31–25.1, which prohibits the possession of drug paraphernalia with the intent that the paraphernalia will be used to manufacture a controlled substance or a controlled substance analog, specifically prohibits her conduct. We disagree. The general/specific rule is applicable when two statutes prohibit the same conduct, although one statute prohibits the conduct more specifically than the other statute. *State v. Blevins*, 40 N.M. 367, 368, 60 P.2d 208, 209 (1936) (concluding that the general/specific rule applies if both statutes condemn the same offense). In such cases, we have held that the legislature intended to limit the charging discretion of the State by requiring the State to charge a defendant with the statute that specifically proscribes the defendant's conduct. *State v. Cleve*, 1999–NMSC–017, ¶ 26, 127 N.M. 240, 980 P.2d 23, *modified on other grounds as stated in State v. Perea*, 2001–NMCA–002, ¶¶ 9–19, 130 N.M. 46, 16 P.3d 1105.

{12} Here, we have already determined that ephedrine is not paraphernalia. Thus, under the circumstances of this case, Section 30–31–25.1(B) and Section 30–31–20(A)(1) do not prohibit the same conduct, and the general/specific rule is not applicable.

**CONCLUSION**

{13} We affirm.

{14} **IT IS SO ORDERED.**

MICHAEL D. BUSTAMANTE, Chief Judge and RODERICK T. KENNEDY, Judge, concur.

**APPENDIX**

**30–31–2. Definitions**

V. "drug paraphernalia" means all equipment, products and materials of any kind that are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingest-

ing, inhaling, or otherwise introducing into the human body a controlled substance or controlled substance analog in violation of the Controlled Substances Act [§ 30–31–1 NMSA 1978]. It includes:

(1) kits used, intended for use or designed for use in planting, propagating, cultivating, growing or harvesting any species of plant that is a controlled substance or controlled substance analog or from which a controlled substance can be derived;

(2) kits used, intended for use or designed for use in manufacturing, compounding, converting, producing, processing or preparing controlled substances or controlled substance analogs;

(3) isomerization devices used, intended for use or designed for use in increasing the potency of any species of plant that is a controlled substance;

(4) testing equipment used, intended for use or designed for use in identifying or in analyzing the strength, effectiveness or purity of controlled substances or controlled substance analogs;

(5) scales or balances used, intended for use or designed for use in weighing or measuring controlled substances or controlled substance analogs;

(6) diluents and adulterants, such as quinine hydrochloride, mannitol, mannite dextrose and lactose, used, intended for use or designed for use in cutting controlled substances or controlled substance analogs;

(7) separation gins and sifters used, intended for use or designed for use in removing twigs and seeds from, or in otherwise cleaning and refining, marijuana;

(8) blenders, bowls, containers, spoons and mixing devices used, intended for use or designed for use in compounding controlled substances or controlled substance analogs;

(9) capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances or controlled substance analogs;

(10) containers and other objects used, intended for use or designed for use in storing or concealing controlled substances or controlled substance analogs;

(11) hypodermic syringes, needles and other objects used, intended for use or designed for use in parenterally injecting controlled substances or controlled substance analogs into the human body;

(12) objects used, intended for use or designed for use in ingesting, inhaling or otherwise introducing marijuana, cocaine, hashish or hashish oil into the human body, such as:

(a) metal, wooden, acrylic, glass, stone, plastic or ceramic pipes, with or without screens, permanent screens, hashish heads or punctured metal bowls;

(b) water pipes;

(c) carburetion tubes and devices;

(d) smoking and carburetion masks;

(e) roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small to hold in the hand;

(f) miniature cocaine spoons and cocaine vials;

(g) chamber pipes;

(h) carburetor pipes;

(i) electric pipes;

(j) air-driven pipes;

(k) chilams;

(l) bongs; or

(m) ice pipes or chillers; and

(13) in determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

(a) statements by the owner or by anyone in control of the object concerning its use;

(b) the proximity of the object, in time and space, to a direct violation of the Controlled Substances Act [§ 30–31–1 NMSA 1978] or any other law relating to controlled substances or controlled substance analogs;

(c) the proximity of the object to controlled substances or controlled substance analogs;

(d) the existence of any residue of a controlled substance or controlled substance analog on the object;

(e) instructions, written or oral, provided with the object concerning its use;

(f) descriptive materials accompanying the object that explain or depict its use;

(g) the manner in which the object is displayed for sale; and

(h) expert testimony concerning its use[.]