# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMCA-031

Filing Date: March 11, 2020

No. A-1-CA-37331

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

NATHANIEL HERTZOG a/k/a
a/k/a NATHANIEL V. HERTZOG
a/k/a NATHANIEL VINCE HERTZOG
a/k/a NATHANIAL HERTZOG a/k/a
JEFFREY HERTZOG a/k/a JEFFERY
HERTZOG,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Brett R. Loveless, District Judge

Released for Publication June 23, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
John Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Mark A. Keller Law Office
Terri Keller
Albuquerque, NM

for Appellant

## OPINION

**HANISEE, Chief Judge.**

**{1}**     Nathanial Hertzog (Defendant) appeals his conviction for leaving the scene of an accident (great bodily harm or death) in the fourth degree, contrary to NMSA 1978, Section 66-7-201(B) (1989). On appeal, Defendant argues (1) the district court erred in failing to properly instruct the jury regarding the definition of "accident"; and (2) the State presented insufficient evidence to support Defendant's conviction. We affirm.

**BACKGROUND**

**{2}**     On the evening of September 12, 2015, Defendant and his girlfriend, Stephanie Frost (Victim), visited the home of their friends, Steve and Samantha Rogers. Over the course of the visit (approximately two and a half hours), Defendant had a "couple of beers," and Victim had five or six shots of hard liquor. Defendant and Victim then left the Rogers' home in seemingly good spirits with Defendant driving his Chevy Avalanche truck.

**{3}**     During the drive an argument erupted between Defendant and Victim. Victim punched Defendant in the face and then jumped out of the moving truck near Lomas and Wyoming Boulevards. The truck was traveling at approximately forty miles per hour at the time. Defendant braked momentarily following the event, and although he was aware that Victim had jumped out of the truck, he did not stop at or near the scene to investigate Victim's condition, report the incident, provide identification, or render assistance. According to Defendant, he continued driving and turned around at the next intersection, but as he drove past the area where Victim had jumped out, he believed he saw her sitting up on the sidewalk with people around her. Instead of stopping, Defendant departed the area. Defendant then called Steve to ask that he pick up Victim, explaining that she "freaked out[,]" "started punching [Defendant]," "jumped out of the truck[,]" and "was [now] sitting up . . . on the curb." Steve told Defendant, "Don't worry about it." He and Samantha would pick Victim up and "give her a ride home."

**{4}**     When Steve and Samantha arrived at the scene about ten minutes after Defendant's call, there were multiple police officers at the scene, and there was a blanket over Victim. Based on witness testimony, it came to light that when Victim jumped out of Defendant's truck, she fell to the ground, and the truck's rear passenger tire ran over her head, crushing her skull and killing her instantly, after which her body rolled toward the curb in the far right lane. After the incident, Defendant told the investigating officer that he did not know that he had run over Victim and did not learn that Victim had died until the following day.

**{5}**     In June 2016 Defendant was charged with knowingly leaving the scene of an accident resulting in great bodily harm or death, contrary to Section 66-7-201(A), (C), and alternatively, the lesser charge of leaving the scene of an accident resulting in great bodily harm or death, contrary to Section 66-7-201(A), (B). At trial, a motorist who witnessed the entire incident from thirty yards away testified that Defendant appeared to be driving the speed limit of forty miles per hour and did not exhibit any signs of unusual driving or swerving. Thereafter, the investigating officer testified that he did not have any evidence that would contradict the motorist-witness's testimony regarding Defendant's

driving or his speed and that Defendant's statements were consistent with information from other sources. The investigating officer also testified that Defendant told him that, on previous occasions, Victim had jumped out of the vehicle abruptly, but only when the vehicle was stopped, and Defendant's attempts to speak with Victim on those occasions "didn't go well."

**{6}** The medical examiner thereafter testified that he determined the cause of Victim's death was a blunt head injury, but he was unable to determine whether the manner of death was an accident, homicide, or suicide. An expert in accident reconstruction testified that it was unusual that Victim's body fell underneath Defendant's vehicle, but not unusual that Defendant may not have felt a noticeable vibration when his vehicle went over Victim's body considering he drove a 5,400 pound truck and there are asphalt and concrete cracks on Lomas Boulevard. The expert further testified that any driver may have attributed such vibration to normal driving conditions. However, the expert also admitted that it was more likely than not that an individual who jumps out of a moving vehicle would be injured, but that the extent of the injury would depend on how the individual lands. Following a three-day trial, the jury convicted Defendant of the lesser charge of leaving the scene of an accident resulting in great bodily harm or death, a fourth degree felony, and Defendant was sentenced to a term of incarceration of eighteen months, of which nine months were suspended, for a total incarceration term of nine months. Defendant appeals from his conviction.

## DISCUSSION

### I.     The District Court Did Not Err in Its Instruction Regarding Leaving the Scene of an Accident

**{7}** Defendant's primary argument on appeal is that the given jury instruction for leaving the scene of an accident was improper because it failed to define what constitutes an "accident." The parties stipulated that a conviction for leaving the scene of an accident requires, as a threshold matter, that Defendant knew he was involved in an accident. Defendant contends an accident is limited to circumstances in which a driver is aware that his or her vehicle collided with or struck another vehicle, person, stationary object, or animal, and that a definitional instruction was necessary to ensure that the jury understood such. Because we conclude that the term accident encompasses a circumstance where a passenger jumps from a moving vehicle, we disagree.

**{8}** Section 66-7-201(A) provides:

> The driver of any vehicle *involved in an accident* resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible, but shall then immediately return

to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of [NMSA 1978,] Section 66-7-203 [(1978)].[1]

(Emphasis added.) Defendant was convicted of violating Subsection (B) of Section 66-7-201, which makes it a fourth degree felony to fail to stop or to comply with the requirements of Section 66-7-203, "where the accident results in great bodily harm or death." Section 66-7-201(B).

**{9}** Because there are no uniform jury instructions for the crimes that Section 66-7-201 defines, the State and Defendant proposed competing instructions, and ultimately, the district court gave the following instruction for the offense for which Defendant was convicted:

1. [D]efendant was the driver of a motor vehicle involved in an accident which resulted in the death of [Victim];

2. [D]efendant knew that there was an accident;

3. [D]efendant knowingly failed to stop his vehicle at the scene of the accident or as close as possible without obstructing traffic more than necessary, [and] knowingly failed to comply with the requirements of . . . Section 66-7-203[.][2]

**{10}** Defendant's proposed instructions were materially the same except for the second element: instead of stating, "[D]efendant knew there was an accident[,]" the proposed instructions attempted to define what constituted the accident, stating, "[D]efendant knowingly collided with or otherwise injured another person/or [D]efendant knew that there was an accident that occurred involving his car and [Victim]" and "the

---

[1]Section 66-7-203 further provides that "[t]he driver of any vehicle *involved in an accident* resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving and shall upon request exhibit his driver's license to the person struck or the driver or occupant of or person attending any vehicle collided with and *shall render to any person injured in such accident reasonable assistance*, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person." (Emphasis added.)

[2]We note that the parties stipulated at trial that knowledge of the accident and "*knowingly* fail[ing] to stop" were required for conviction under Subsection (B). The language of the statute does not support such a requirement for a conviction under Subsection (B). Section 66-7-201(A) sets out an obligation to stop when a driver is "involved in an accident[,]" but Section 66-7-201(A) and (B) are silent as to the requisite mens rea. While we express our doubt as to this aspect of the parties' interpretation of the statute, we need not consider this further because the jury indeed found that Defendant *knew* he was involved in an accident *and* that he *knowingly* failed to stop, thereby satisfying a stricter burden of proof than that seemingly required by the statute. *See Jackson v. State*, 1983-NMSC-098, ¶ 18, 100 N.M. 487, 672 P.2d 660 ("[T]here was no prejudice to the defendant because the jury instruction given without objection required a stricter burden of proof."). Moreover, since the parties have not briefed this issue for our review, we decline to address the issue on the merits. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("It is of no benefit either to the parties or to future litigants for [an appellate court] to promulgate case law based on [its] own speculation rather than the parties' carefully considered arguments."). Accordingly, we need not further discuss any error pertaining to this issue.

accident resulted in great bodily harm or death to [Victim]." After lengthy discussion regarding the statute and the appropriate jury instruction, the district court declined to include Defendant's proposed language.

**{11}**    Since the issue was preserved, we review the jury instructions for reversible error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error."). Our inquiry seeks "to determine whether a reasonable juror would have been confused or misdirected by the jury instruction[,]" and whether the instruction "through omission or misstatement, fail[s] to provide the juror with an accurate rendition of the relevant law." *State v. Luna*, 2018-NMCA-025, ¶ 19, ___ P.3d ___ (internal quotation marks and citations omitted). "The propriety of jury instructions given . . . is a mixed question of law and fact[,]" which we review de novo*. State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted). Moreover, "[w]hen evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69.

**{12}**    The term "accident" is not defined within the definition section of the New Mexico Motor Vehicle Code, and our courts have yet to define the word; therefore, the question before us is one of first impression. *See* NMSA 1978, §§ 66-1-1 to -5 (1978, as amended through 2019); *see also* § 66-7-203 (requiring a driver to give information and render aid when involved in an accident resulting in injury to or death of any person or damage to any vehicle). "The meaning of language used in a statute is a question of law that we review de novo." *State v. McWhorter*, 2005-NMCA-133, ¶ 5, 138 N.M. 580, 124 P.3d 215. "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. We accomplish such by giving effect to the ordinary and plain meaning of the words of statute, unless this leads to an absurd or unreasonable result and "unless the [L]egislature indicates a different interpretation is necessary." *McWhorter*, 2005-NMCA-133, ¶ 5. "If the language of the statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* However, "[i]f the relevant statutory language is unclear, ambiguous, or reasonably subject to multiple interpretations, then the Court should proceed . . . [to consider] the history, background, and overall structure of the statute, as well as its function within a comprehensive legislative scheme." *State v. Almanzar*, 2014-NMSC-001, ¶ 15, 316 P.3d 183 (internal quotation marks and citations omitted).

**{13}**    Defendant's challenge to the jury instruction requires us to interpret the phrase "involved in an accident" under Section 66-7-201(A). Defendant urges us to equate "accident" with "collision"—a construction that is consistent with the jury instruction he proposed and his defense that he did not know that his vehicle had collided with Victim. The State, in contrast, argues that "accident" should be construed more broadly and that the given jury instruction was adequate.

**{14}**    To determine the appropriate construction, we first consider the ordinary and plain meaning of the term "accident." *See McWhorter*, 2005-NMCA-133, ¶ 5. *Black's Law Dictionary* (*Black's*) defines "accident" as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated [and] any unwanted or harmful event occurring suddenly, as a collision, spill, fall, or the like, irrespective of cause or blame." *Black's Law Dictionary* (11th ed. 2019). However, *Black's* also defines "automobile accident" and "car accident" as "[a]n accident in which a motor vehicle *collides* with another vehicle or with a person, animal, or object, usu[ally] causing damage or injury." *Id.* (emphasis added). Notably, Section 66-7-201(A) uses the broader language of "involved in an accident[,]" instead of specifying a *motor vehicle* accident, signaling the Legislature's intent to cover more than a vehicle colliding with something. The Legislature's choice of the general term "accident" rather than a more specific term (car, automobile, or motor vehicle accident) indicates that it did not intend the narrow construction Defendant urges us to adopt. *See State v. Ramos*, 2013-NMSC-031, ¶ 15, 305 P.3d 921 (observing that when the Legislature knew how to include something, and did not, we assume the choice was deliberate); *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 (noting that "[w]e will not read into a statute language which is not there"). Thus, our view is that the plain meaning of the language within the context of the statute as a whole applies to more than collisions.[3]

**{15}**    Even if we assume for purposes of discussion that the term "accident" is susceptible to different interpretations, the statute's history and purpose require us to reject Defendant's interpretation. *See Almanzar*, 2014-NMSC-001, ¶ 15. Our hit and run statute, Section 66-7-201, is derived from the Section 10-102(a) of the Uniform Vehicle Code (UVC), which states:

> The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until such driver has fulfilled the requirements of §10-104. Every such stop shall be made without obstructing traffic more than is necessary.

National Committee on Uniform Traffic Laws & Ordinances (NCUTLO), *Uniform Vehicle Code & Model Traffic Ordinance* ch. 10, § 10-102(a), (2000), http://iamtraffic.org/wp-content/uploads/2013/01/UVC2000.pdf. An annotation to UVC Section 10-102 further explains that New Mexico, along with thirty-one other states, enacted the statute in verbatim or in substantial conformity with UVC § 10-102. *Traffic Laws Annotated* (*TLA*) § 10-102, at 30 (1979). Only Kentucky and Massachusetts modified the statutory language to "require stops only by drivers whose vehicles actually collide with other vehicles or persons, while the [UVC] requires such stops by any driver 'involved' in an

---

[3]Defendant also argues that Sections 66-7-201 and 66-7-203 should be read together as supporting his contention that an accident requires a "collision." However, contrary to Defendant's argument, Section 66-7-203 does not specify that an accident requires a collision; instead, the statute outlines the obligation to provide information in the event of a collision as well as the duty to render reasonable assistance in the event a person is injured.

accident, even though there is no collision or striking of another vehicle or person." *Id.* at 29. Our Legislature elected not to modify our statute in such a manner, which indicates that it intended for the statute to apply more broadly. *See Ramos*, 2013-NMSC-031, ¶ 15.

**{16}** Our interpretation of "involved in an accident" also recognizes that the underlying policy objectives of our hit-and-run statutes are to prohibit drivers from evading criminal or civil liability, to ensure people receive necessary aid or medical attention, and to deter drivers from thwarting or impeding investigations and avoiding liability for the harm they cause by failing to stop or failing to comply with Section 66-7-203. *See Wylie v. State*, 797 P.2d 651, 657-58 (Alaska Ct. App. 1990) (interpreting statutory phrase "involved in an accident" broadly based in part on recognition that the purposes of hit-and-run statute include preventing drivers from evading civil and criminal liability by escaping before their identities can be established and protecting injured persons from distress or danger due to lack of treatment); *State v. Rodgers*, 909 P.2d 445, 446-49 (Ariz. Ct. App. 1995) (interpreting statutory phrase "involved in an accident," rejecting construction limiting scope to collisions, and recognizing that hit-and-run statute is designed to prevent drivers from thwarting investigations and evading civil or criminal liability and to ensure that injured victims receive aid immediately). We would undermine these objectives by construing the term "accident" to include only collisions, thereby excluding other types of accidents that seriously injure or, as in this case, kill a person.

**{17}** We also find persuasive the decisions of other courts in states with hit-and-run statutes nearly identical to New Mexico's. *See TLA* § 10-102 at 30. Courts in those states have rejected overly narrow constructions of the sort advanced by Defendant. In *Rodgers*, 909 P.2d at 446, the defendant's hit-and-run conviction was based on him leaving the scene when a passenger in his vehicle jumped out of his vehicle, which was traveling over fifty miles per hour, and suffered a fatal head injury from either her fall or from being run over by a second vehicle. The Arizona Court of Appeals held that the text of its hit-and-run statute "does not support the assertion that the statutory duties are triggered only by the occurrence of a collision" and concluded that "the defendant was 'involved in an accident' from the moment the victim leapt from [the defendant's] car." *Id.* at 448; *see Sheldon v. State*, 100 S.W.3d 497, 501-02 (Tex. App. 2003) (rejecting the defendant's argument that he was not involved in an accident because the victim's death was not caused by a collision).

**{18}** Based on the plain meaning of the term, the history of Section 66-7-201, the purposes of the hit-and-run statute, and guidance from courts in other jurisdictions, we conclude that the Legislature intended for the term "accident" to have a broader meaning than "collision."[4] *See State v. Lovato*, 2011-NMCA-065, ¶ 16, 150 N.M. 39,

---

4We decline Defendant's invitation to apply the rule of lenity because his argument does not involve an "insurmountable ambiguity" pertaining to "the intended scope of [the hit-and-run] statute." *State v. Johnson*, 2009-NMSC-049, ¶ 18, 147 N.M. 177, 218 P.3d 863 (internal quotation marks and citation omitted). "[L]enity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* (emphasis, internal quotation marks, and citation omitted). No such situation exists here.

256 P.3d 982 ("When this Court engages in the judicial construction of a statute it is explaining its understanding of what the statute has meant continuously since the date when it became law." (internal quotation marks and citation omitted)). Accordingly, the district court did not err by refusing to give Defendant's proposed instruction, which purported to limit the definition of accident to collision. Rather than preventing the jury from being confused and misled, Defendant's proposed instruction would itself have confused and misled the jury.

## II.    The State Presented Sufficient Evidence to Support Defendant's Conviction

**{19}**    Defendant further contends that his conviction for leaving the scene of an accident is not supported by sufficient evidence because "[t]here was absolutely no evidence presented that Defendant had any knowledge that his car was in a collision with the [V]ictim or that his car 'struck' the [V]ictim." We disagree.

**{20}**    We review a challenge to the sufficiency of the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Our appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Gwynne*, 2018-NMCA-033, ¶ 49, 417 P.3d 1157 (internal quotation marks and citation omitted), *cert. denied*, ___-NMCERT-___ (No. S-1-SC-36926, Apr. 10, 2018). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

**{21}**    Per its instructions, in order to convict Defendant of leaving the scene of an accident, the jury had to find that: (1) "[D]efendant was the driver of a motor vehicle involved in an accident which resulted in the death of [Victim]"; (2) "[D]efendant knew that there was an accident"; and (3) "[D]efendant knowingly failed to stop his vehicle at the scene of the accident or as close as possible without obstructing traffic more than necessary, [and] knowingly failed to comply with the requirements of . . . Section 66-7-203."

**{22}**    The testimonial evidence at trial conclusively established the only element challenged on appeal: whether Defendant knew his vehicle was involved in an accident. Indeed, Defendant admitted that he was aware that Victim jumped from his vehicle while it was traveling approximately forty miles per hour—an event that qualifies as an accident for purposes of New Mexico's hit-and-run statute. Because a reasonable juror could conclude that Defendant was "involved in an accident," we must reject Defendant's claim that the evidence is not sufficient to support his conviction.

**CONCLUSION**

**{23}**   For these reasons, we affirm Defendant's conviction.

**{24}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**