This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40746**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ANA RODRIGUEZ a/k/a**
**ANA URIAS RODRIGUEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Schuler Gray, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Aletheia V.P. Allen, Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Melanie C. McNett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** A jury convicted Defendant Ana Urias Rodriguez of voluntary manslaughter under NMSA 1978, Section 30-2-3(A) (1994). On appeal, Defendant argues (1) the district court erred by failing to include jury instructions explicitly stating that a person may act in self-defense in the face of an attempted rape; and (2) the evidence was insufficient to rebut her theory of self-defense. We hold the district court properly

instructed the jury on self-defense and sufficient evidence supports Defendant's conviction.

**BACKGROUND**

**{2}** Defendant and A.P. (Victim) had been best friends for years, had used methamphetamine together, and briefly engaged in an intimate sexual relationship in the year preceding Victim's death. Defendant maintained that after Defendant ended the romantic relationship, Victim became physically and emotionally abusive. Defendant stated that on the day of Victim's death, she went to Victim's house to use methamphetamine and to check on Victim. At the time, Defendant was armed with a loaded gun, which she stated she carried for protection.

**{3}** According to Defendant, upon her arrival, she went into Victim's bedroom to change into a pair of shorts, Victim followed her into the bedroom and attempted to initiate sex with her, and Defendant declined. Defendant told an officer that Victim then grabbed her, started shaking her, accused her of dating other guys, tried to get her gun, and that the gun "just went off."

**{4}** During the same interview Defendant told the officer she did not remember where Victim was shot or how he was standing when he got shot, and did not remember whether she had gotten high before she shot Victim. When confronted with the officer's opinion that Victim was shot on the side of his body, not face forward, Defendant stated that she remembered she was sitting on the bed, Victim was standing up and when Victim saw that Defendant got the gun and saw that she "had the upper hand" that it scared Victim and she shot Victim.

**{5}** Defendant also told a detention officer that she had killed her best friend accidentally, and testified at trial that when she declined Victim's efforts to have sex that he got on top of her, shook her violently, and tried to open her legs. Defendant testified that she and Victim struggled with her pants and the gun, that the gun went off, and Defendant feared Victim would rape and kill her, and that she never intended to hurt him.

**{6}** After the close of evidence, the district court instructed the jury on the elements of second-degree murder, voluntary manslaughter, and on self-defense. The district court did not instruct the jury with three instructions Defendant submitted to supplement the self-defense instruction. The jury convicted Defendant of voluntary manslaughter and this appeal followed.

**DISCUSSION**

**I.     The Jury Instructions on Self-Defense Accurately Stated the Law**

**{7}** "The propriety of jury instructions given or denied is a mixed question of law and fact" which we review de novo. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747,

228 P.3d 1167 (internal quotation marks and citation omitted). "Our inquiry seeks to determine whether a reasonable juror would have been confused or misdirected by the [given] jury instruction, and whether the instruction through omission or misstatement, fails to provide the juror with an accurate rendition of the relevant law." *State v. Hertzog*, 2020-NMCA-031, ¶ 11, 464 P.3d 1090 (alterations, internal quotation marks, and citation omitted). We review this issue for reversible error because it was preserved. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *Lucero*, 2010-NMSC-011, ¶ 11 (internal quotation marks and citation omitted).

**{8}**      The district court instructed the jury on the elements of second-degree murder and voluntary manslaughter, allowing a conviction of either crime if the State proved those elements beyond a reasonable doubt. The district court also instructed the jury that, in order to convict Defendant of either crime, the State would have to prove beyond a reasonable doubt that she did *not* act in self-defense. The self-defense instruction stated:

>      An issue you must consider in this case is whether [D]efendant killed [Victim] in self[-]defense.
>
>      The killing is in self[-]defense if:
>
>      1.      There was an appearance of immediate danger of death or great bodily harm to [D]efendant *as a result of* [*Victim*] *attempting to rape her*; and
>
>      2.      [D]efendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed [Victim] because of that fear; and
>
>      3.      A reasonable person in the same circumstances as [D]efendant would have acted as [D]efendant did.
>
>      The burden is on the [S]tate to prove beyond a reasonable doubt that [D]efendant did not act in self[-]defense. If you have a reasonable doubt as to whether [D]efendant acted in self[-]defense you must find [D]efendant not guilty.

During the jury instruction conference, Defendant proffered three nonuniform jury instructions regarding the elements for self-defense, which the district court declined to use. Those instructions stated,

>      A sexual assault or an attempted sexual assault can cause death or great bodily harm. A defendant who is threatened with an attempted rape may use deadly force to defend herself.

A defendant who is threatened with an attempted rape may use deadly force to defend herself.

You are instructed in the defense of one's person, she may use deadly force against an attempted rape or rape. A person fearing a rape would be justified in using such force as necessary, even to the extent of taking the life of her assailant, to protect her honor and her body from sexual abuse.

Defendant's three instructions were purportedly based on *State v. Martinez*, 1924-NMSC-075, ¶ 12, 30 N.M. 178, 230 P. 379. In *Martinez*, the defendant shot and killed a man who raised an axe in a threatening manner and the defendant believed he was attempting to rape her. *Id.* ¶¶ 2-3. At trial, the defense requested two self-defense instructions including one that stated,

You are instructed the defense of one's person may . . . include the protection of her chastity as her body from injury of any other kind; and if a woman be attacked under certain circumstances, as viewed from her standpoint at the time of said attack, as will lead her to reasonably apprehend that said attack would result in the sexual abuse of her person, then such woman would be justified in using such force as necessary, even to the extent of taking the life of her assailant, to protect her honor and chastity and her body from sexual abuse.

*Id.* ¶ 4 (internal quotation marks omitted). The district court rejected that instruction, and instead issued an instruction stating,

In this cause, the defendant sets up the ground of self-defense. Under the laws of this state homicide is justifiable when committed in the lawful defense of one's own person, when the person assaulted shall have reasonable ground to apprehend a design upon the part of her assailant to kill her or to do her some great personal injury, and there shall be imminent danger of such design being accomplished.

If you believe from the evidence, to the extent of raising in your mind a reasonable doubt of the defendant's guilt, that at the time the defendant shot the deceased, the deceased was attempting to kill the defendant or to do her some great personal injury, or that the defendant had reasonable grounds to apprehend, and did apprehend, that the deceased was then and there about to kill her or to do her some great personal injury, and that the defendant had reasonable grounds to believe and did believe that the danger of death or great personal injury being inflicted upon her by the defendant was then and there imminent and impending, and that the defendant had reasonable cause to believe and did believe that it was necessary for her to shoot the defendant in order to avoid such impending danger to her, you will then find the defendant not guilty.

*Id.* ¶ 5 (internal quotation marks omitted). Notably, the district court's given instructions made no mention of the defendant's belief that she needed to protect herself against sexual assault. Our Supreme Court held that the given instructions were deficient because "the jury might have inferred that [the instruction] only had reference to such injuries as the defendant apprehended the deceased intended to inflict upon her with his axe" and did not reflect evidence of prior assaults that the defendant had presented at trial or that deceased used the axe to "to compel her to submit" to his intended sexual assault. *Id.* ¶¶ 9-11. The Court further held that self-defense includes the right to defend against "an assault by the deceased with intent to have illicit and forcible sexual intercourse with the defendant." *Id.* ¶ 12.

**{9}** According to Defendant, her proposed instructions were "necessary to clarify that rape is included with great bodily harm and death for purposes of the right to self-defense." The district court declined to use Defendant's additional instructions explaining that the tendered self-defense instruction sufficiently instructed the jury that Defendant could have acted in self-defense because of attempted rape. The district court explained, "It's covered . . . in the self-defense [instruction] and that [it] expressly says rape or attempted rape. . . . I would think most reasonable people understand what can happen. . . . Hopefully people understand there's all kinds of injuries."

**{10}** Defendant argues that the district court erred by failing to give her requested separate self-defense jury instructions stating that "[a] defendant who is threatened with an attempted rape may use deadly force to defend herself" and that "[a] reasonable juror would have been confused about whether self-defense includes the right to defend against attempted rape." Specifically, Defendant states, "The self-defense instruction as given was inadequate to convey that rape falls within the category of harms against which a person is legally permitted to act in self-defense, even without additional great bodily harm."

**{11}** We conclude a reasonable juror would not have been confused or misdirected by the given jury instruction, and that the instruction provided an accurate rendition of the relevant law. *Hertzog*, 2020-NMCA-031, ¶ 11. Additional or actual great bodily harm is not required to claim self-defense. As UJI 14-5171(1) NMRA indicates, a defendant need only act out of "an *appearance* of immediate danger of death or great bodily harm." (Emphasis added.) Use note 3 of UJI 14-5171 also indicates that the instruction should state such an appearance may result from an "*unlawful act, felony, or act* which would result in death or some great bodily harm as established by the evidence." (Emphasis added.) Here, the unlawful act was the attempted rape.

**{12}** The given instruction fully conveyed the theory that Defendant feared Victim would rape and kill her and therefore acted in self-defense. *Cf. State v. Coffin*, 1999-NMSC-038, ¶¶ 11, 13, 128 N.M. 192, 991 P.2d 477 (noting that a jury instruction adequately depicted the defendant's theory of self-defense as a result of fear of death or great bodily harm arising from a confrontation with two different people). The instruction also provided an accurate rendition of the law, which establishes that rape or

attempted rape may serve as a justification for self-defense if there was the appearance of immediate danger or great bodily harm.

**{13}** By the proposed instructions, Defendant sought to redefine "death or great bodily harm" to include sexual assault as a matter of law, so that self-defense would be warranted if there was an appearance of an immediate danger of sexual assault, without, as Defendant puts it, evidence of any "additional great bodily harm." The uniform jury instructions, however, defines great bodily harm. *See* UJI 14-131 NMRA. The jury received that instruction and had to make the determination whether Defendant introduced evidence to raise a reasonable doubt about whether there was an appearance of immediate danger of death or great bodily harm resulting from Defendant's attempted rape and whether the State refuted that claim. *See State v. Parish*, 1994-NMSC-073, ¶¶ 15-16, 118 N.M. 39, 878 P.2d 988 ("The defendant's only obligation is to introduce evidence that will raise in the minds of the jurors a reasonable doubt about the matter" and if "credible evidence supports [the defendant's] claim that the killing was in self-defense, the burden shift[s] to the [s]tate to refute this claim."). *See* UJI 14-131.

**{14}** The *Martinez* Court approved a jury instruction that informed "the jury that a woman has the right to protect her sexual purity against an attack, which, under the circumstances as viewed by her, would lead her to reasonably apprehend that such attack would result in the sexual abuse of her person." 1924-NMSC-075, ¶ 12. To the extent that this instruction can be viewed as supplanting the requirements of UJI 14-5171 and UJI 14-131, we must conclude that in adopting the Uniform Criminal Jury Instructions, our Supreme Court has implicitly overruled conflicting statements in *Martinez. Cf. State v. Padilla*, 1977-NMCA-055, ¶¶ 12-14, 90 N.M. 481, 565 P.2d 352 (noting that *Martinez* approved instructions that are now viewed as impermissible comments on the evidence and holding that by adopting the Uniform Criminal Jury Instructions, *Martinez* had been implicitly overruled to the extent the opinion conflicted with uniform jury instructions). We conclude that a reasonable juror could infer from the given instructions that they would have to find Defendant acted in self-defense in response to the appearance of great bodily harm or death resulting from attempted rape. As such, we conclude that the given jury instructions were not misleading, accurately reflected the law, and we "presume that the jury understood and complied with the instructions." *State v. Sivils*, 2023-NMCA-080, ¶ 25, 538 P.3d 126 (internal quotation marks and citation omitted).

## II.     Sufficient Evidence Supports Defendant's Conviction

**{15}** We next turn to Defendant's argument that her conviction for voluntary manslaughter is not supported by sufficient evidence because the State failed to prove she was not acting in self-defense. "We review a challenge to the sufficiency of the evidence to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *Hertzog*, 2020-NMCA-031, ¶ 20 (internal quotation marks and citation omitted). "The reviewing court views the evidence in the

light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (alteration, internal quotation marks, and citation omitted).

**{16}** In order to convict Defendant of voluntary manslaughter, the district court instructed the jury on the elements, in relevant part, as follows,

> For you to find [D]efendant guilty of voluntary manslaughter, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant killed [Victim];
>
> 2. [D]efendant knew that [her] acts created a strong probability of death or great bodily harm to [Victim];
>
> 3. [D]efendant acted as a result of sufficient provocation;
>
> 4. [D]efendant did not act in self[-]defense;
>
> . . . .
>
> The difference between second[-]degree murder and voluntary manslaughter is sufficient provocation. In second[-]degree murder the defendant kills without having been sufficiently provoked, that is, without sufficient provocation. In the case of voluntary manslaughter the defendant kills after having been sufficiently provoked, that is, as a result of sufficient provocation. Sufficient provocation reduces second[-]degree murder to voluntary manslaughter.

*See* UJI 14-220 NMRA. The district court also included the following instruction on sufficient provocation, which stated,

> "Sufficient provocation" can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self[-]control in any ordinary person of average disposition. The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

*See* UJI 14-222 NMRA.

**{17}** On appeal, Defendant does not challenge the sufficiency of the evidence with regard to the elements of voluntary manslaughter but rather the elements of self-defense and we therefore limit our review to the same. Specifically Defendant argues that "the State did not meet its burden to *disprove* that (1) [Defendant] was in fact put in

fear by the apparent danger of immediate death or great bodily harm and killed [Victim] because of that fear; and (2) [a] reasonable person in the same circumstances as [Defendant] would have acted as she did."

**{18}** In support of her position, Defendant directs this court to statements she made wherein she told an officer that she was afraid Victim was going to kill her if he got the gun, that she didn't want to be intimate with Victim and her testimony "that she did not consent to sex, she feared [Victim] was going to rape and kill her, and [that] she never intended to hurt him." Defendant additionally directs this Court to photographs of the bruises on her legs, the Victim's body at the scene showing that he was mostly undressed, and of Victim's home showing that it was in a state of disarray, which would be consistent with her testimony that Victim became enraged, breaking the bathroom and closet doors and throwing things around the room. Defendant argues that this evidence indicates she acted in self-defense and that a reasonable person would have done the same.

**{19}** However, "[w]e do not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence, and we do not weigh the evidence or substitute our judgment for that of the fact[-]finder so long as there is sufficient evidence to support the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (alterations, internal quotation marks, and citation omitted). Rather, we defer to the jury and disregard evidence that supports acquittal. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (observing that "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts" (internal quotation marks and citation omitted)).

**{20}** While a reasonable jury could conclude that evidence of Victim's aggressive behavior towards Defendant when she declined his sexual advances created an appearance of immediate danger of death or great bodily harm that put Defendant in fear and she shot Victim because of that fear, a reasonable jury could conclude from Defendant's statement to the officer, that once she got the gun, Victim realized she "had the upper hand" in the struggle, that Victim was frightened, and with the testimony from the chief medical investigator that the cause of Victim 's death was a gunshot wound to the back, that Defendant was not acting in self-defense when she shot Victim but rather was sufficiently provoked by his actions. *See id.* ("[T]he jury is free to reject [the d]efendant's version of the facts." (internal quotation marks and citation omitted)); *State v. Hixon*, 2023-NMCA-048, ¶ 44, 534 P.3d 235 ("We disregard all evidence and inferences that support a different result." (internal quotation marks and citation omitted)).

**{21}** Based on the foregoing we hold that the State presented sufficient evidence to convict Defendant of voluntary manslaughter. Here, by acquitting Defendant of second-degree murder, and convicting Defendant of voluntary manslaughter, the jury concluded that "[D]efendant acted as a result of sufficient provocation." *See* UJI 14-220 NMRA.

However, the jury was free to conclude that the provocation Defendant faced was insufficient to establish Defendant's claim of self-defense.

**CONCLUSION**

**{22}** For the foregoing reasons, we affirm.

**{23}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**KATHERINE A. WRAY, Judge**